**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

JOSE SANCHEZ RAMOS

Plaintiff,

v.

BAWADI, INC.
d/b/a Bawadi Mediterranean Grill and Sweets Café

a Virginia corporation,

Serve: Khalid Mekki, Registered Agent
5916 Leesburg Pike
Falls Church, VA 22041

and KHALID MEKKI

Defendants

JURY TRIAL DEMANDED

Case No.:

# COMPLAINT

## Preliminary Statement

1. Plaintiff José Sanchez Ramos brings this suit against his former employers: Bawadi, Inc. d/b/a Bawadi Mediterranean Grill and Sweets Café, and one of its officers and directors, Khalid Mekki.

2. Mr. Sanchez's claims arise from Defendants' failure to pay him the minimum and overtime wages due to him under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA"). Defendant Bawadi Restaurant's failure to pay Mr. Sanchez his promised wages also constitutes a breach of contract under Virginia law.

3. The Court has subject-matter jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b) (private right of action) and 28 U.S.C. § 1331 (federal question). The Court has subject-matter jurisdiction over the state-law breach-of-contract claim because it is so closely related to the federal-law claims as to form part of the same case or controversy. *See* 28 U.S.C. § 1367(a).

4. The Court has personal jurisdiction over Defendant Bawadi Restaurant because the restaurant is located in this District, and because the events or omissions giving rise to Plaintiff's claims occurred there. The Court has personal jurisdiction over Defendant Khalid Mekki because (1) he owns and manages Bawadi Restaurant, (2) as part of his managerial duties, he was present at the Restaurant almost every day during Mr. Sanchez's employment there; and (3) as Mr. Sanchez's employer, he participated directly in the wage violations that give rise to this complaint.

5. Venue is proper in the Eastern District of Virginia because Defendant Bawadi Restaurant has its principal place of business there, and because a substantial part of the events or omissions giving rise to the claim occurred there. *See* 28 U.S.C. § 1391(b)(2)–(3).

**PARTIES**

6. Plaintiff José Sanchez Ramos ("Mr. Sanchez") is an adult resident of Fairfax County, Virginia.

7. Defendant Bawadi, Inc. is a Virginia corporation located in Fairfax County, Virginia, operating as a halal restaurant and Middle Eastern bakery. It does business under the name "Bawadi Mediterranean Grill and Sweets Café," and is referred to in this complaint as "Bawadi Restaurant" or simply "the Restaurant."

8. Defendant Khalid Mekki is an officer and a director of Bawadi Restaurant. On information and belief, he is the owner and general manager of Bawadi Restaurant. On information and belief, he is a resident of Maryland.

## FACTS

### Defendants

9. Defendant Khalid Mekki controls the day-to-day operations of Defendant Bawadi, Inc.
10. Defendant Mekki had the power to hire and fire workers for all positions at the Restaurant.
11. Defendants directly or indirectly set Mr. Sanchez's work schedule, or had the power to do so.
12. Defendants determined Mr. Sanchez's pay rate and method of payment.
13. Defendants maintained all records related to Mr. Sanchez's employment.
14. On information and belief, at all relevant times, Defendants had at least two employees who were engaged in interstate commerce, or who handled, sold, or otherwise worked on goods or materials that moved in interstate commerce.
15. On information and belief, the gross annual business volume of Bawadi Restaurant exceeded $500,000 at all relevant times.
16. On information and belief, the Restaurant regularly ordered and received supplies from other states, or that had traveled through interstate commerce.

### Plaintiff's Employment

17. José Sanchez Ramos worked as a cook and a food-preparation worker at Bawadi Restaurant from about September 2016 to about May 23, 2017.
18. Mr. Sanchez learned about the job around early September 2016 from his brother Juan, who was working in the Bawadi Restaurant kitchen as a cook and a food-preparation worker at the time. Juan was planning to leave Virginia in about a month's time and wanted Mr.

Sanchez to have his job after he left. So Mr. Sanchez began working alongside Juan on a trial basis, under terms set by Bawadi's general manager, Khalid Mekki: a schedule of 10 a.m. to 10 p.m., six days a week (Thursday to Tuesday, with Wednesdays off), and compensation at a flat rate of $500 per week. Mr. Mekki knew about and consented to Mr. Sanchez's work on these terms.

19. After about eight or ten days of trial-period work, Mr. Sanchez and his brother Juan met with Mr. Mekki in the evening at the end of their shift. Mr. Mekki offered Mr. Sanchez a regular job in the Bawadi Restaurant kitchen on the same terms as during the trial period: a schedule of 10 a.m. to 10 p.m., six days a week, and compensation at a flat rate of $500 per week. Mr. Sanchez accepted the offer.

20. Mr. Sanchez and his brother Juan worked together in the Restaurant kitchen for approximately the month of September 2016. During that month, Juan showed Mr. Sanchez the ropes: first how to do the food-preparation work, and then how cook traditional Middle Eastern dishes. By the end of October, Mr. Sanchez had reached a level of proficiency where he could perform his daily tasks essentially without direct supervision.

21. Mr. Sanchez began his workday at 10 a.m. by preparing and cooking hot foods to be served at the Restaurant's lunch buffet. He would also prepare containers of condiments and salad ingredients, cook rice, make sauces, and put whole chickens in the oven. Then from 11 a.m. to closing time, he would prepare and cook food orders for customers of the restaurant. At the end of his shift he would clean his workstation and put any unused foods into storage.

22. Around the end of September 2016, Juan left the Restaurant, and Mr. Mekki raised Mr. Sanchez's wages to $550 per week.

23. There were two other regular workers in the Restaurant kitchen: a man named "Tino" who, like Mr. Sanchez, was a food-preparation worker and cook, and another cook named "Ali." Ali was nominally the worker in charge of the kitchen, but he was in the restaurant only about three days a week and did not often speak to Mr. Sanchez, as Mr. Sanchez was already proficient in his duties and did not need direct supervision.

24. Throughout Mr. Sanchez's employment, Khalid Mekki was present at the Restaurant almost every day. He worked in the Restaurant's administrative office, talked with customers, and occasionally checked in to see how things were going in the kitchen.

25. Whenever Mr. Sanchez ever had to miss a day of work for some reason, Mr. Mekki was the person who he asked for permission. For example, Mr. Sanchez asked Mr. Mekki if he could have Saturday, March 18 off so that he could move house, and Mr. Mekki said yes.

26. Around December 2016, Mr. Mekki Raised Mr. Sanchez's wages to $600 per week.

27. Around March 2017, Mr. Sanchez asked Mr. Mekki if he could change his schedule in order to take English classes on Monday and Wednesday evenings. Mr. Mekki agreed, and so around March 12, 2017, Mr. Sanchez's schedule changed to a Friday-to-Wednesday schedule (with Thursdays off). On Tuesdays, Fridays, Saturdays, and Sundays, he worked from 10 a.m. to 10 p.m. On Mondays and Wednesdays, he started work at 10 a.m. and left between 5 p.m. and 6 p.m. to attend his English classes. His wage rate remained $600 per week.

28. On or around May 5, 2017, Mr. Sanchez was working at the Restaurant when a mattress store adjacent to the Restaurant caught fire. The Restaurant suffered damage and had to close for a little over two weeks. Mr. Mekki asked Mr. Sanchez not to take another job and

said that he would continue to pay him at his regular $600 weekly rate to do clean-up work at the Restaurant to help get it ready to reopen.

29. Mr. Sanchez performed cleaning work for about two workweeks while the restaurant was closed to customers. He worked at least fifteen or twenty hours during each of these weeks. On or around May 17, 2017, Mr. Mekki paid Mr. Sanchez $1,100 for these two weeks of work.

30. On May 19, 2017, the restaurant started preparing to reopen for business in earnest. Mr. Sanchez worked on May 19 from 10 a.m. to 7:30 p.m., and then from 10:00 a.m. to 10:00 p.m. on May 20 and 21.

31. The Restaurant reopened for business on May 22, 2017, a Monday. Mr. Sanchez worked a 10:00 a.m. to 10:00 p.m. shift during this day as well, foregoing his normal Monday English class.

32. The next day, May 23, Mr. Sanchez reported to work at 10:00 a.m. as usual and started going about his daily tasks. By about noon, he had just finished cooking the rice and was starting to prepare the tomatoes when Mr. Mekki started yelling at him angrily about his work. Mr. Sanchez told Mr. Mekki that if Mr. Mekki didn't like his work, to tell him so in a respectful way. Mr. Mekki continued to yell, and Mr. Sanchez proceeded to walk out of the restaurant. Mr. Mekki shouted that if he left, he shouldn't bother coming back.

33. Mr. Sanchez's last day of work was May 23, 2017.

**Pay Practices and Pay Problems**

34. Throughout his employment, Mr. Sanchez received his wages directly from Mr. Mekki as cash in hand.

35. Mr. Sanchez's pay was frequently late, and he would have to track Mr. Mekki down and ask to be paid his wages.

36. On Saturday and Sunday nights, Mr. Sanchez regularly worked between 15 and 30 extra minutes after his scheduled 10:00 p.m. shift end. Defendants were aware of this work.

37. Defendants hired Mr. Sanchez at a flat weekly wage rate, and Mr. Mekki had promised Mr. Sanchez that he would be paid weekly. But in reality he was paid twice a month: on the fifteenth of the month and on the last day of the month.

38. Defendants paid Mr. Sanchez as if each month consisted of exactly four weeks. I.e., on each of his two monthly paydays—the fifteenth of the month and the last day of the month—he would receive exactly two times his bargained-for weekly pay rate. However, an average month is about 4.333 weeks long. Thus, Mr. Sanchez received less than his bargained-for wage rate for nearly all the work he performed at the Restaurant.

39. Mr. Sanchez worked six days a week. If he ever missed a day of work, the restaurant reduced his weekly salary by one-sixth. For example, when Mr. Sanchez took off work on March 18th to move house, he was earning $600 per week at that time. Mr. Mekki reduced Mr. Sanchez's salary for that week by $100.

40. At no time during Mr. Sanchez's employment did he receive a time-and-a-half overtime premium for his weekly hours above 40. He worked over 40 hours in every one of his workweeks, other than the two weeks in May 2017 when the Restaurant was closed to customers after the fire.

41. Mr. Sanchez's pay for those two weeks in May was short by $100—he was promised $1,200 but received only $1,100.

42. Mr. Sanchez received no wages at all for his last five days of work: May 19–23, 2017.

## CLAIMS

### Fair Labor Standards Act, 29 U.S.C. §§ 201–219

43. At all times relevant to this action:

- Mr. Sanchez was Defendants' "employee" within the meaning of 29 U.S.C. § 203(e)(1);
- Defendants were Mr. Sanchez's "employers" within the meaning of 29 U.S.C. § 203(d);
- Defendants "employed" Mr. Sanchez within the meaning of 29 U.S.C. § 203(g); and
- Mr. Sanchez was engaged in commerce, or was employed by Defendants in an enterprise engaged in commerce, within the meaning of 29 U.S.C. § 203(b).

### Claim 1:

### Failure to Pay Overtime Compensation
### 29 U.S.C. § 207

44. Mr. Sanchez worked over 40 hours in each workweek, other than the two workweeks in May 2017 when Bawadi Restaurant was closed due to fire.

45. Defendants failed to pay Mr. Sanchez a time-and-a-half overtime premium for any of the hours that he worked beyond 40 in every such workweek.

46. By failing to pay Mr. Sanchez an hourly time-and-a half overtime premium, Defendants violated the FLSA's overtime provision, 29 U.S.C. § 207.

### Claim 2:

### Failure to Pay Minimum Wages
### 29 U.S.C. § 206

47. Defendants were required to pay Mr. Sanchez at least $7.25 for each hour that he worked in a given workweek.

48. During approximately the months of September, October, and November 2016, Mr. Sanchez's effective hourly wage fell below the FLSA's $7.25-per-hour minimum.

49. Defendants did not pay Mr. Sanchez any wages at all for his last five days of work. This violated the minimum-wage provision of the FLSA.

**Claim 3:**

**Breach of Contract (Against Bawadi, Inc. Only)**

50. Mr. Sanchez reached an agreement with Defendant Bawadi, Inc. whereby Mr. Sanchez would perform food preparation and cooking work in exchange for a weekly wage.

51. An employment contract was thus formed under Virginia law.

52. The company failed to pay Mr. Sanchez at the bargained-for rate for all the work he performed, breaching the contract.

53. As a result of the company's breach, Mr. Sanchez suffered damages.

**REQUESTED RELIEF**

Wherefore, Mr. Sanchez respectfully requests that this court provide the following relief:

54. Award Mr. Sanchez his actual damages under the FLSA, jointly and severally against all Defendants, in the amount of all unpaid minimum and overtime wages, in an amount to be proved at trial but currently estimated to be at least $4,653.77.

55. Award Mr. Sanchez an additional amount as liquidated damages equal to his unpaid minimum wages and overtime, jointly and severally against all Defendants, pursuant to 29 U.S.C. §216(b);

56. Award Mr. Sanchez his costs and reasonable attorney's fees, as provided by the Fair Labor Standards Act, 29 U.S.C. § 216(b), jointly and severally against all Defendants;

57. Award Mr. Sanchez his contract damages under Virginia law against Defendant Bawadi, Inc. only; and

58. Any other relief the Court deems just and proper.

Plaintiff demands trial by jury.

Respectfully submitted,

/s/ Nicholas Cooper Marritz

Date: August 15, 2017

Nicholas Cooper Marritz (VA Bar No. 89795)
Hallie Ryan (VA Bar No. 85927)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
T: (703) 720-5607
F: (703) 778-3454
E: nicholas@justice4all.org
hallie@justice4all.org

*Counsel for José Sanchez Ramos*