# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| JOSE SANCHEZ RAMOS<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BAWADI, INC.<br>d/b/a Bawadi Mediterranean Grill and Sweets Café<br><br>and KHALID MEKKI<br><br>　　　　Defendants | Case No. 1:17-cv-924-LMB-TCB<br><br>Hearing Date: December 1, 2017 |

### Memorandum In Support of Plaintiff's Motion for Default Judgment

Under Rule 55 of the Federal Rules of Civil Procedure, if a defendant fails to plead or otherwise respond to a lawsuit against him, the plaintiff may seek a default judgment. Plaintiff José Sanchez Ramos served Defendants Bawadi, Inc. ("Bawadi Restaurant" or "The Restaurant") and Khalid Mekki with a complaint for unpaid wages and overtime, but Defendants did not file any responsive pleading by the Court's October 20 deadline. Plaintiff now moves the Court for a default judgment in his favor because:

- This Court has subject-matter jurisdiction over the claims pled in the complaint and personal jurisdiction over Defendants themselves;

- Defendants were properly served;

- The complaint alleges facts establishing all necessary elements of Plaintiffs' claims; and

- The complaint alleges facts establishing the amount of damages Plaintiff is owed, as well as Defendants' joint and several liability for the portion of those damages arising under the Fair Labor Standards Act.

**Argument**

**I.   The Court has jurisdiction to render a default judgment in this case.**

For a court to render a default judgment, it must have both subject-matter jurisdiction over the Plaintiff's claims and personal jurisdiction over the defaulting party. *Dutan v. Sheet Metal Remodeling, LLC*, 48 F. Supp. 3d 860, 866 (E.D. Va. 2014). Both are satisfied here.

**A.   The Court has subject-matter jurisdiction over Plaintiff's claims.**

Plaintiff's claims for unpaid minimum wages and overtime arise under the Fair Labor Standards Act (FLSA), a federal statute. *See* First Amended Complaint, ECF No. 6 at 5–7. Federal district courts have original subject-matter jurisdiction over all civil actions arising under federal statutes. 28 U.S.C. § 1331. The FLSA also specifically authorizes workers to file private lawsuits to enforce the law's minimum-wage and overtime provisions in federal court. 29 U.S.C. § 216(b). Thus, the Court has subject-matter jurisdiction over Plaintiff's FLSA claims.

The court also has supplemental jurisdiction over Plaintiff's' state-law breach-of-contract claim. District courts have supplemental jurisdiction over state-law claims if they are so related to the federal-law claims as to form part of the same case or controversy. 28 U.S.C. § 1367(a). Here, both the federal FLSA claims and the state-law contract claims are predicated on the same conduct: Defendants' failure to properly pay Plaintiff his proper wages for the hours that he worked. Thus, the state-law claims arise out of the same common core of facts as the federal claims, forming part of the same case or controversy, and the Court has supplemental jurisdiction over these claims. *See Dutan*, 48 F. Supp. 3d at 866.

Thus, the court has jurisdiction over all of the claims in the the complaint.

**B.  The Court has personal jurisdiction over the Defendants.**

This Court also has personal jurisdiction over the Defendants. For a federal court to have personal jurisdiction over a defendant, the defendant must be subject to the personal jurisdiction or "long-arm" statute of the state in which the federal court sits. Exercise of personal jurisdiction must also be fundamentally fair under the Due Process Clause of the Fourteenth Amendment. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Virginia's personal-jurisdiction statute authorizes jurisdiction over anyone who transacts business in Virginia, contracts to supply goods or services in Virginia, or uses or possesses any real property in Virginia, among other things. *See* Va. Code § 8.01-328.1. The Due Process Clause authorizes jurisdiction over anyone who resides in the forum state, or any non-resident who (1) is personally served with process while in the forum state or (2) has such minimum contacts with the forum state such that it is fair for the person to be haled into court there. *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 (1990) (in-state service of process); *Int'l Shoe*, 326 U.S. at 316 (minimum-contacts test).

Here, Defendant Bawadi Restaurant is a Virginia corporation with its principal place of business in Fairfax County. (Compl. ¶7; Ex. A, State Corporation Commission, Corporate Data Inquiry). Defendant Mekki was personally served in Virginia while at the Restaurant. (Affidavit of Service, ECF No. 4). Mekki controls the Restaurant's day-to-day operations. (Compl. ¶8). He owns and manages the Restaurant; was present at the Restaurant nearly every day during Plaintiff's employment; and participated directly in the wage violations that gave rise to Plaintiff's complaint. (Compl. ¶4; Ex. B, Declaration of José Sanchez Ramos (("Sanchez Decl.")) at ¶¶3, 10, 21–25). These contacts satisfy both Virginia's jurisdictional statute and the Constitution, and thus the Court has personal jurisdiction over both Defendants.

## II.  The Defendants were properly served and have failed to respond.

Plaintiff filed his Complaint on August 15, 2017. (ECF No. 1). Plaintiff attempted to serve the complaint via notice-and-waiver under Civil Rule 4(d). (*See* Plaintiff's Letter to Clerk, ECF No. 1-2). However, Defendants failed to waive service within 30 days, and Plaintiff arranged for service via private process server. (*See* Plaintiff's Letter to Clerk, ECF No. 2). The process server served Khalid Mekki personally on September 29, both in his individual capacity and as the registered agent for Bawadi, Inc. (Affidavits of Service, ECF No. 4). Defendants had 21 days to respond (Fed. R. Civ. P. 12(a)), making their response due by October 20. Defendants failed to respond, and so Plaintiff requested an entry of default against in accordance with Rule 55(a) (ECF No. 5). The Clerk entered Defendants' default on October 30. (ECF No. 6).

## III.  Plaintiff alleges facts sufficient to establish each element of his claims, as well as Defendants' joint and several liability for his claims under the FLSA.

As demonstrated below, Plaintiff has alleged facts in the Complaint sufficient to establish each element of his FLSA claims and contract claims for failure to pay promised wages. Because Defendants have opted not to respond, all of these factual allegations are deemed admitted. *Dutan*, 48 F. Supp. 3d at 865, citing Fed. R. Civ. P. 8(b)(6).

### A.  Count 1: Failure to Pay FLSA Overtime Compensation

To establish a FLSA violation for non-payment of overtime, a plaintiff must show that:

- He was employed by the defendant;
- He was engaged in commerce, or in the production of goods for commerce;
- He was not exempt from overtime under 29 U.S.C. § 213; and
- He worked over 40 hours in at least one workweek and was not compensated at a rate of 1.5 times his regular rate for each hour he worked beyond 40.

*See Dutan*, 48 F. Supp. 3d at 868, citing 29 U.S.C. § 207.

### 1.   Defendants jointly employed Plaintiff under the FLSA.

The FLSA's minimum-wage and overtime requirements apply to "employees." 29 U.S.C.

§§ 206–207. Under the FLSA, the word "employ" includes "to suffer or permit to work," *id.* at §

203(g), which then-Senator Hugo Black approvingly called "the broadest definition that has ever

been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945),

*quoting* 81 Cong. Rec. 7657.[1]

A worker can be employed jointly by two or more people under the Act. 29 C.F.R. §

791.2. Where a worker sues more than one person or entity for the same FLSA violations, the

Fourth Circuit has established a two-step test for district courts to determine whether these

persons or entities are jointly and severally liable. First, the court must determine whether the

entities should be treated as "joint employers" under the Act; if so, the court must then analyze

whether the worker is an an employee or independent contractor of the combined entity. *Salinas*

*v. Commercial Interiors, Inc.*, 848 F.3d 125, 139–40 (4th Cir. 2017).

### a.   Defendants were Plaintiff's "joint employers."

"In *Salinas*, the Fourth Circuit provided six nonexclusive factors to help distinguish

between 'separate' employment—when two persons or entities are 'entirely independent' with

respect to a worker's employment—and 'joint' employment—when the two persons or entities

are 'not completely disassociated.'" *Diaz v. Banh Cuon Saigon Rest., Inc.*, No. 1:16-cv-295,

2017 WL 2999703, at *6 (E.D. Va. Mar. 29, 2017), quoting *Salinas*, 848 F.3d at 141. The Fourth

---

[1] The FLSA purports to define "employer" and "employee," but the definitions are circular and
unhelpful: an "employer" includes anyone acting "in the interest of an employer in relation to
an employee," and an "employee" is "any individual employed by an employer." 29 U.S.C. §
203(d) and (e).

Circuit found that "the fundamental threshold question that must be resolved in every joint employment case [is] whether a purported joint employer shares or codetermines the essential terms and conditions of a worker's employment." *Salinas*, 848 F.3d at 142. The factors are:

1. Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;

2. Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

3. The degree of permanency and duration of the relationship between the putative joint employers;

4. Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

5. Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

6. Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Salinas*, 848 F.3d at at 141–42.

Here, Plaintiff has introduced facts sufficient to establish a joint employment relationship between Defendants Khalid Mekki and Bawadi Restaurant. Far from being "completely independent," Mekki has broad and expansive powers to determine the essential job terms and conditions of any worker who works at Bawadi. Mekki controls Bawadi's day-to-day operations. (Compl. ¶9). He has the power to hire and fire all workers at the Restaurant, and was the person who hired Plaintiff. (Compl. ¶¶10, 18, 19, 32; Sanchez Decl. at ¶¶3, 4). He determined Plaintiff's pay rate and method of payment. (Compl. ¶¶19, 22, 26; Sanchez Decl. at ¶¶3, 4, 8, 12, 14, 19).

He set Plaintiff's work schedule and approved changes to it. (Compl. ¶¶18, 19, 27; Sanchez Decl. at ¶¶3, 4,11, 13). Whenever Plaintiff needed to miss a day of work for some reason, Mekki was the person he notified and whose approval he needed. (Compl. ¶25; Sanchez Decl. at ¶11). Mekki maintained all records related to Plaintiff's employment. (Compl. ¶13). And although Mekki did not regularly supervise Plaintiff's work in the restaurant kitchen, this is because Plaintiff learned his duties quickly and essentially did not require direct supervision. (Compl. ¶¶20, 23; Sanchez Decl. at ¶¶5, 9). Under the totality of the circumstances, then, Defendants operated as Plaintiff's joint employers under the FLSA. *Cf. Banh Cuon Saigon Rest.*, 2017 WL 2999703, at *7 (restaurateur was an FLSA joint employer where she owned the restaurant and oversaw all its operations, including setting workers' wage rates).

### b. Plaintiff was Defendants' "employee."

Having established that Defendants should be treated as joint employers under the FLSA, Plaintiff must next establish that he was the combined entities' "employee" under the Act. As the Fourth Circuit has stated:

> To determine whether a worker is an employee under the FLSA, courts look to the "economic realities" of the relationship between the worker and the putative employer. The touchstone of the "economic realities" test is whether the worker is economically dependent on the business to which he renders service or is, as a matter of economic reality, in business for himself.
>
> Application of the test turns on six factors:
>
> 1. The degree of control that the putative employer has over the manner in which the work is performed;
>
> 2. The worker's opportunities for profit or loss dependent on his managerial skill;

3. The worker's investment in equipment or material, or his employment of other workers;

4. The degree of skill required for the work;

5. The permanence of the working relationship; and

6. The degree to which the services rendered are an integral part of the putative employer's business.

*McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 241 (4th Cir. 2016) (internal citations and punctuation omitted).

These factors are not exhaustive and none is dispositive. *Id.* Rather, the test turns on the totality of the circumstances. *Id.*

Plaintiff, a restaurant kitchen worker, was clearly Defendants' employee under this test:

- While Defendant Mekki did not personally exercise much hour-by-hour supervision over Plaintiff's cooking and food-preparation work, neither did anyone else. Moreover, Mekki was the owner and general manager of Bawadi Restaurant and controlled its day-to-day operations. (Compl. ¶¶8, 9).

- Plaintiff had no opportunity for profit or loss dependent on his managerial skill; he was paid a fixed salary twice a month. (Compl. ¶¶18, 22, 26, 27; Sanchez Decl. at ¶¶22, 23).

- The restaurant provided Plaintiff with all the equipment and materials he needed to do his job, and he did not employ any workers of his own. (Sanchez Decl. at ¶7).

- While restaurant cooking and food-preparation work certainly requires some degree of skill, the Fourth Circuit has said that "even the skill displayed by the most accomplished dancers in a ballet company would hardly by itself be sufficient to denote an independent contractor designation." *McFeeley*, 825 F.3d at 244. The same principle is true here.

- Plaintiff was hired on an indefinite basis and did not hold other employment during the time he worked for Defendants. (Sanchez Decl. at ¶2).

- Cooking and food preparation work are obviously integral to the work of any restaurant.

In sum, Plaintiff has clearly established that Defendants were his "joint employers" and he their "employee" under the FLSA. Thus, the Court should find that the FLSA applies to this case, and should find Defendants jointly and severally liable for its violation.

### 2. Plaintiff was engaged in "commerce."

The FLSA's minimum-wage and overtime requirements apply to employees engaged in "commerce." 29 U.S.C. §§ 206–207. Under the FLSA, "commerce" means essentially "interstate commerce." *See id*. at § 203(b). Plaintiff and his fellow kitchen workers regularly worked with food and other products that Defendants had ordered from other states or that had traveled in interstate commerce. *See* Compl. ¶¶14, 16. The restaurant may also have grossed over $500,000 in annual revenue. *See id.* at ¶15.[2] Thus, Plaintiff was engaged in commerce under the FLSA.

### 3.  Plaintiff was not exempt from overtime.

The FLSA exempts certain narrow classes of employees from its overtime pay requirements. *See* 29 U.S.C. § 213. But none of these exemptions applies to restaurant workers who do the kinds of things that Plaintiff did: food preparation and cooking work. (*See* Compl. ¶14; Sanchez Decl. at ¶2). And Defendants have introduced no evidence showing that an FLSA exemption applies. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) (employer bears the burden of proving that an employee's job is exempt).

---

[2] On the posture of a default judgment, Plaintiff—a low-skilled restaurant worker—cannot be expected to know with certainty his employer's gross volume of business. *See Dutan*, 48 F. Supp. 3d at 868 n.5 (although FLSA coverage question was "a close call," the court erred on the side of allowing the FLSA case to proceed where the defendant had not appeared in the case to contest the issue).

**4. The Plaintiff worked over 40 hours each week without being paid time-and-a-half for his hours worked beyond 40 in any given week.**

Plaintiff worked at Bawadi Restaurant from about September 2016 to about May 23, 2017. (Compl. ¶17; Sanchez Decl. at ¶2). He worked over 40 hours in every one of his workweeks, other than roughly two weeks in May 2017 when the restaurant was closed to customers after a fire. (Compl. ¶40).

- From September 2016 to around March 12, 2017, Plaintiff worked about 72.5 hours a week—12 hours each day, 6 days a week, plus an average of about one-half hour of off-the-clock work on the weekends. (Compl. ¶18, 19, 36; Sanchez Decl. at ¶¶3, 4, 21).

- From around March 12, 2017 to around May 5, 2017, he worked about 63.5 hours a week—four 12-hour days, two 7-to-8-hour days, plus an average of about one-half hour of off-the-clock work on the weekends. (Compl. ¶¶27, 36; Sanchez Decl. at ¶¶13, 21).

- During his last week of work—May 19 to 23, 2017—he worked about 47.5 hours. (Compl. ¶¶30, 31, 32; Sanchez Decl. at ¶¶16, 17, 21).

As discussed above, Plaintiff was promised a fixed weekly salary. However, the FLSA and its implementing regulations contain strict requirements for employers who wish to pay their employees by means of a weekly salary: any weekly salary must also provide an express calculation of the overtime premium, agreed to in advance by employer and employee, or else the pay plan violates the Act. As 29 C.F.R. § 778.500 provides:

> [I]t is not possible for an employer lawfully to agree with his employees that they will receive the same total sum, comprising both straight time and overtime compensation, in all weeks without regard to the number of overtime hours (if any) worked in any workweek. [Compliance with § 207's overtime requirements] cannot be achieved by the payment of a fixed salary or by the payment of a lump sum for overtime or by any other method or device.

Here, although Plaintiff worked overtime hours practically every week, his flat weekly salary did not apply an adjusted time-and-a-half premium to his weekly overtime hours.

(Compl. ¶40; Sanchez Decl. at ¶25). This is confirmed by those occasions where Plaintiff had to miss a day of work. Mr. Sanchez worked six days a week, and if he missed a day, Defendants would reduce his weekly salary by one-sixth. (Compl. ¶39, Sanchez Decl. at ¶24). Reducing his salary on an hour-for-hour basis in this way would only make sense if all of his hours—including his overtime hours—were being paid at the same rate.

As the evidence makes plain, the flat weekly rate paid to Plaintiff was meant to be just that: a flat weekly rate. And by failing to pay the overtime premium for the overtime hours he worked each week, Defendants' pay plan violated the FLSA.

## B.  Count 2: Failure to Pay FLSA Minimum Wages

To establish an FLSA violation for failure to pay the minimum wage, a plaintiff must show that:

- He was employed by the defendant;
- He was engaged in commerce, or in the production of goods for commerce;
- He was not exempt from the minimum wage under 29 U.S.C. § 213; and
- He was not paid at least the minimum wage for every hour he worked in a given workweek.

*See Dutan*, 48 F. Supp. 3d at 868, citing 29 U.S.C. § 206.

As shown above in the discussion of Plaintiff's overtime claims, elements 1–3 are readily satisfied. The fourth element is also met: the federal minimum wage is $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). During approximately the months of September, October, and November 2016, Plaintiff's effective hourly wage rate fell below $7.25 per hour. And for his last five days of work, Defendants did not pay Plaintiff any wages at all. (Compl. ¶49; Sanchez Decl. at ¶27). Thus, Defendants violated the FLSA's minimum wage requirement during these periods.

### C.  Count 3: Breach of Contract

Plaintiff has alleged facts sufficient to support his state-law breach-of-contract claims against Defendant Bawadi, Inc. Plaintiff reached an agreement with Bawadi whereby the Plaintiff performed food-preparation and cooking work for the Restaurant in exchange for a weekly wage. (Compl. ¶¶18, 19, 22, 26, 27, 28; Sanchez Decl. at ¶¶2, 3, 8, 12, 13, 14). Employment contracts were thus formed under Virginia law. However, Bawadi failed to compensate Plaintiff for all the work he performed under the contract, in three ways:

First, although Bawadi promised to pay Plaintiff a certain amount per week, in fact it paid Plaintiff only twice a month—treating each month as if it were exactly four weeks long. (*See* Compl. ¶¶37, 38; Sanchez Decl. ¶¶22, 23). However, an average month is in fact 4.333 weeks long (52 weeks divided by 12 months). As a result, Plaintiff received less than his bargained-for wage rate throughout his employment.

Second, during the two-week period in May 2017 when the restaurant was closed to customers after a fire, Bawadi promised to pay Mr. Sanchez his normal $600-a-week salary, both as compensation for the clean-up work he performed during this period and as an inducement not to quit and take another job. (*See* Compl. ¶¶28, 29; Sanchez Decl. ¶¶14). Plaintiff worked for two weeks under this arrangement but received only $1,100 rather than $1,200. (Compl. ¶¶29, 41; Sanchez Decl. ¶¶15, 26)

Finally, Plainitiff received no wages at all for his last five days of work. (Compl. ¶49; Sanchez Decl. at ¶27).

As a result of Bawadi's breach, Plaintiff suffered damages—the difference between how much Bawadi promised to pay him and how much it actually paid him. Thus, Plaintiff has a claim for damages under Virginia contract law.

**IV.  Plaintiff has alleged facts sufficient to establish the amount of his damages.**

**A.  Plaintiff may use reasonable inferences to prove the amount of his damages.**

As the Supreme Court has said, a worker can meet his burden of proof if he produces

sufficient evidence to show the amount and extent of his work "as a matter of just and reasonable

inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Here, Plaintiff

submits that the following inferences are reasonable in calculating his damages:

- On Saturday and Sunday nights, Plaintiff regularly worked between 15 and 30 minutes off-the-clock at the end of his shift. (Compl. ¶36; Sanchez decl. at ¶21). Therefore, it is reasonable to infer that Plaintiff worked at least one-half hour off-the clock each week in addition to his normal schedule, and Plaintiff has added 0.5 hours to his calculation of hours worked in each week.

- A month is on average 4.333 weeks long (52 weeks divided by 12 months).

- Starting around the second half of March 2017, Plaintiff's clock-out time varied between 5 p.m. and 6 p.m. on Mondays and Wednesdays. (Compl. ¶27; Sanchez Decl. at ¶13). Thus it is reasonable to infer that Plaintiff normally left work on average at around 5:30 p.m.

Plaintiff has also had to approximate the number of workweeks that he worked at a given wage

rate. As Defendants have not introduced more precise records to the contrary—records that the

FLSA required them to keep[3]—Plaintiff's estimates are likewise admissible under *Mt. Clemens*

*Pottery*. *See* 328 U.S. at 668 (if the employer fails to negate the reasonableness of the

employee's evidence, then the court may award damages to the employee, "though the result be

only approximate.")

---

[3] *See* 29 C.F.R. § 516.2(a)(5)–(12) (duty to keep records, including the date of each workweek and the applicable wage rate during that week).

### B.  Actual Damages Calculations

Under the FLSA, for any week where Plaintiff earned less than $7.25 per hour, he is entitled to the difference as actual damages. 29 U.S.C. § 216(b). For any week where Plaintiff worked overtime but was not paid an overtime premium, he is entitled to the unpaid overtime premium. *Id.* Under contract law, for any week where Plaintiff was not paid the weekly wage he was promised, he is owed the difference between the wages promised and the wages paid.

Plaintiff's regular rate changed six times during the course of his employment with Defendants; the following is a calculation of his actual damages for each period.

### 1.  *September 2016* (approximately 4 workweeks)

Defendants paid Plaintiff $2,000 for the work he performed for the month of September 2016. (*See* Compl. ¶¶18, 19, 37, 38; Sanchez Decl. at ¶¶3, 4, 22, 23). A month is on average 4.333 weeks long. Thus his effective hourly rate for this period was ($2,000/month) ÷ (4.333 weeks/month) = $461.57 per week.[4] Plaintiff worked 72.5 hours a week during this period. (Compl. ¶¶18, 19, 36; Sanchez Decl. at ¶¶3, 4, 21). Therefore, his regular hourly rate for this period was ($461.57/week) ÷ (72.5 hours/week) = $6.36 per hour. His overtime rate would normally be calculated at 1.5 times his regular rate; however, $6.36 is lower than the FLSA minimum wage of $7.25 per hour, so it makes more sense to calculate his FLSA overtime using thes minimum wage as the regular rate. Accordingly, Plaintiff's overtime rate during this period was  $10.875 per hour.

---

[4] His exact weekly wage rate received during this period was $461.57396722825 per week.

**Damages:**

*FLSA Damages*

- o  Minimum Wage:

     - ▪  For each regular hour he worked, Plaintiff is owed the difference between the minimum wage and his effective hourly wage: ($7.25) − ($6.36) = $0.89 per regular hour.

     - ▪  ($0.89/regular hour) × (40 regular hours/week) × (4 weeks) = **$142.40**.

- o  Overtime:

     - ▪  For each overtime hour he worked, Plaintiff is owed the difference between his overtime rate ($10.875/hour) and his actual rate ($6.36/hour). ($10.875) − ($6.36) = $4.515 per overtime hour.

     - ▪  ($4.515/overtime hour) × (32.5 overtime hours/week) × (4 weeks) = **$586.95**.

*Contract Damages*

- o  Plaintiff was promised $500 per week. He was actually paid $461.57 per week, a difference of $38.43 per week.

- o  ($38.43/week) × 4 weeks = **$153.72.**

**2.  *October–November 2016* (approximately 8 workweeks)**

Defendants paid Plaintiff $2,200 per month for the work he performed for the months of October and November 2016. (*See* Compl. ¶¶22, 25, 26, 38; Sanchez Decl. at ¶¶8, 12, 22, 23). A month is on average 4.333 weeks long. Thus his effective hourly rate for this period was ($2,200/month) ÷ (4.333 weeks/month) = $507.73/week.[5] Plaintiff worked 72.5 hours a week

---

[5] His exact weekly wage rate received during this period was $507.7313639510732 per week.

during this period. (*See* Compl. ¶¶19, 36; Sanchez Decl. at ¶¶4, 21). Therefore, his regular hourly rate for this period was ($507.73/week) ÷ (72.5 hours/week) = $7.00 per hour. His overtime rate would normally be calculated at 1.5 times his regular rate; however, $7.00 is lower than the FLSA minimum wage of $7.25 per hour, so it makes more sense to calculate his FLSA overtime using the minimum wage as the regular rate. Accordingly, Plaintiff's overtime rate for this period was $10.875 per hour.

---

**Damages:**

*FLSA Damages*

- o Minimum Wage:
    - ▪ For each regular hour he worked, Plaintiff is owed the difference between the minimum wage and his effective hourly wage: ($7.25) – ($7.00) = $0.25 per regular hour.
    - ▪ ($0.25/regular hour) × (40 regular hours/week) × (8 weeks) = **$80.00**
- o Overtime:
    - ▪ For each overtime hour he worked, Plaintiff is owed the difference between his overtime rate ($10.875/hour) and his actual rate ($7.00/hour). ($10.875) – ($7.00) = $3.875 per overtime hour.
    - ▪ ($3.875/overtime hour) × (32.5 overtime hours/week) × (8 weeks) = **$1,007.50**

*Contract Damages*

- o Plaintiff was promised $550 per week. He was actually paid $507.73 per week, a difference of $42.27 per week.
- o ($42.27/week) × 8 weeks = **$338.16**

---

### 3.   *December 2016–First half of March 2017* (approximately 14 workweeks)

Defendants paid Plaintiff $2,400 per month for the work he performed from December 2016 through the first half of March 2017. (*See* Compl. ¶¶26, 27, 38; Sanchez Decl. at ¶¶12, 13, 23). A month is on average 4.333 weeks long. Thus his effective hourly rate for this period was ($2,400/month) ÷ (4.333 weeks/month) = $553.88 per week.[6] Plaintiff worked 72.5 hours a week during this period. (Compl. ¶¶19, 36; Sanchez Decl. at ¶¶4, 21). Therefore, his regular hourly rate for this period was ($553.88/week) ÷ (72.5 hours/week) = $7.63 per hour. His overtime rate was $11.44 per hour.

---

**Damages:**

*FLSA Damages*

- o Overtime:

  - ▪  For each overtime hour he worked, Plaintiff is owed the difference between his overtime rate ($11.44/hour) and his actual rate ($7.63/hour). ($11.44) − ($7.63) = $3.81 per overtime hour.

  - ▪ ($3.81/overtime hour) × (32.5 overtime hours/week) × (14 weeks) = **$1,733.55**

*Contract Damages*

- o Plaintiff was promised $600 per week. He was actually paid $553.88 per week, a difference of $46.12 per week.

- o ($46.12/week) × 14 weeks = **$645.68**

---

[6] His exact weekly wage rate received during this period was $553.888760673898 per week.

### 4. *Second half of March 2017–First week of May 2017* (approximately 7 workweeks)

Defendants paid Plaintiff $2,400 per month for the work he performed from about the second half of March 2017 through about the first week of May 2017. (*See* Compl. ¶¶26, 27, 28, 38; Sanchez Decl. at ¶¶12, 13, 14, 23). A month is on average 4.333 weeks long. Thus his effective hourly rate for this period was ($2,400/month) ÷ (4.333 weeks/month) = $553.88 per week.[7] Plaintiff worked 63.5 hours a week during this period. (Compl. ¶¶27, 36; Sanchez Decl. at ¶¶13, 21). Therefore, his regular hourly rate for this period was ($553.88/week) ÷ (63.5 hours/week) = $8.72 per hour. His overtime rate was $13.08 per hour.

---

**Damages:**

*FLSA Damages*

- o Overtime:

    - ▪ For each overtime hour he worked, Plaintiff is owed the difference between his overtime rate ($13.08/hour) and his actual rate ($8.72/hour). ($13.08) − ($8.72) = $4.36 per overtime hour.

    - ▪ ($4.36/overtime hour) × (23.5 overtime hours/week) × (7 weeks) = **$717.22**

*Contract Damages*

- o Plaintiff was promised $600 per week. He was actually paid $553.88 per week, a difference of $46.12 per week.

- o ($46.12/week) × 7 weeks = **$322.84**

---

[7] His exact weekly wage rate received during this period was $553.888760673898 per week.

**5.** *Second two weeks of May 2017* **(approximately 2 workweeks)**

*Contract Damages*

Around May 5, 2017, Bawadi Restaurant was damaged by fire and closed to the public for about two weeks. (Compl. ¶¶28, 29; Sanchez Decl. at ¶¶14, 15). Bawadi Restaurant agreed to continue paying Plaintiff his normal weekly wage rate of $600 per week as an inducement not to take another job and to instead do clean-up work on the restaurant premises to help get it ready to reopen. (*See id.*). Plaintiff worked for two weeks under this arrangement but received only $1,100 rather than $1,200. (Compl. ¶¶29, 41; Sanchez Decl. at ¶¶15, 26) Thus his contract damages for this period are **$100**.

**6.** *May 19–23, 2017* **(1 workweek)**

Plaintiff worked 47.5 hours in his last workweek but received no pay for this week. (Compl. ¶¶30, 31, 32, 33, 42). Reasonably inferring that his wage rate had reverted to what it had been before the fire—a regular rate of $8.27 per hour and an overtime rate of $13.08 per hour, his damages are as follows:

---

**Damages:**

*FLSA Damages*

- o Minimum Wage

    - ▪ For each regular hour he worked, Plaintiff should have received $7.25/hour. (40 regular hours hours × $7.25 per regular hour) = **$290**

- o Overtime

    - ▪ For each overtime hour he worked, Plaintiff is owed his overtime rate of $13.08.

    - ▪ (7.5 overtime hours) × ($13.08 per overtime hour) = **$98.10**

---

> *Contract Damages*
>
> o   Plaintiff's regular rate was $8.33 per hour. (47.5 hours) × ($8.33 per hour) = **$395.67**

### Total Actual Damages

Accordingly, Plaintiff's total actual damages are as follows:

**FLSA: $4,655.72**

**Contract: $1,956.07**

## V.  FLSA Liquidated Damages

The FLSA also permits the Court to award additional liquidated damages in an amount equal to Plaintiff's FLSA actual damages. 29 U.S.C. § 216(b). While these damages are discretionary, the Fourth Circuit has noted that the FLSA "plainly envisions" the award of liquidated damages as "the norm" for plaintiffs who prevail. *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir.1997). Indeed, a court may exercise its discretion not to award liquidated damages only if the employer satisfies the court that the employer had a good-faith belief—and objectively reasonable grounds to believe—that it had complied with the law. *Id.* On the posture of a default judgment, of course, the employer has made no such showing, making the award of liquidated damages "generally mandatory." *See Kennedy v. A Touch of Patience Shared Housing, Inc.*, 779 F. Supp. 2d 516, 524 (E.D. Va. 2011). For these reasons, Plaintiff respectfully requests that the Court award him liquidated damages in an amount equal to his actual damages—$4,655.72.

## VI.  FLSA Attorney's Fees and Costs

Finally, prevailing FLSA plaintiffs are entitled to their attorney's fees and the costs of suit. 29 U.S.C. § 216(b). Plaintiff therefore requests an award of attorney's fees and costs as part of the judgment.

## TOTAL RELIEF REQUESTED

For the foregoing reasons, Plaintiff seeks a default judgment granting him the following relief:

1. An award of Plaintiff's actual damages under the FLSA for unpaid minimum and overtime wages, jointly and severally against both Defendants, in the amount of $4,655.72,

2. An award of an additional, equal amount of liquidated damages under the FLSA, i.e., an additional award of $4,655.72, jointly and severally against both Defendants;

3. An award of Plaintiff's $100 in contract damages that are not duplicative of his FLSA damages, against Defendant Bawadi, Inc. only;

4. An award of Plaintiff's attorney's fees and costs under the FLSA; and

5. Any other relief the Court thinks just and proper.

   In the alternative, Plaintiff respectfully requests an award of his total contract damages, in the amount of $1,956.07, against Defendant Bawadi, Inc. only.

Date: November 7, 2017                          Respectfully submitted,


/s/ Nicholas Cooper Marritz
Nicholas Cooper Marritz (VSB #89795)
Hallie Ryan (VA Bar No. 85927)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 720-5607
Fax: (703) 778-3454
nicholas@justice4all.org

**Certificate of Service**

I hereby certify that on November 7, 2017, I served Defendants with the foregoing Memorandum In Support Of Motion for Default Judgment via U.S. Mail at the following addresses:

> Khalid Mekki
> Bawadi Mediterranean Grill and Sweets Café
> 5916 Leesburg Pike
> Falls Church, VA 22041

> Bawadi, Inc.
> Khalid Mekki, Registered Agent
> 5916 Leesburg Pike
> Falls Church, VA 22041

/s/ Nicholas Cooper Marritz
Nicholas Cooper Marritz (VSB No. 89795)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 720-5607
Fax: (703) 778-3454
nicholas@justice4all.org
*Counsel for Plaintiff*