# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| JOSE SANCHEZ RAMOS | |
| Plaintiff, | |
| v. | Case No. 1:17-cv-924-LMB-TCB |
| BAWADI, INC. d/b/a Bawadi Mediterranean Grill and Sweets Café | Hearing Date: |
| and KHALID MEKKI | April 6, 2018, 10:00 a.m. |
| Defendants | |

**Memorandum In Support of**
**Motion for a Protective Order and to Quash Subpoena**

## INTRODUCTION

Last August, Plaintiff sued his former employers for failure to pay him the overtime and minimum wages due under the federal Fair Labor Standards Act, and for breach of contract under Virginia law, also for failure to pay wages. (Complaint, ECF No. 1). Yesterday, Defendants informed Plaintiff's counsel that Defendants intend to subpoena the U.S. Department of Homeland Security and seek "any and all immigration documents pertaining to [the Plaintiff], or a statement that no such documents exist."[1] (Ex. A, Notice of Subpoena; Ex. B, Subpoena to

---

[1] Defendants have already attempted to conduct discovery into Plaintiff's immigration status through interrogatories, requests for admissions, and document requests. The parties have met and conferred regarding this issue, and have reached impasse.

1

DHS). As detailed below, however, federal courts have roundly rejected attempts by employers to conduct invasive discovery into the immigration status of their employees who bring worker-rights cases—to say nothing of those who seek those workers' entire immigration histories directly from the federal government. Because Plaintiff's immigration status is irrelevant to this wage-and-hour case, and because of the substantial prejudicial and *in terrorem* effects caused by Defendants' attempt to bring Plaintiff to the attention of DHS, this Court should do the same. Plaintiff asks that the Court (1) quash the subpoena, (2) enter a protective order barring Defendants from further prying into his immigration status, and (3) award him the costs of this motion.

## LEGAL STANDARD

### A. Motion to Quash Defendants' Subpoena to DHS

Third-party subpoenas are generally subject to the same limits as other kinds of discovery. *See Singletary v. Sterling Transp. Co. Inc.*, 298 F.R.D. 237, 240–41 (E.D. Va. 2012). To protect both parties and non-parties from potential abuse of the subpoena power, on timely motion a federal court "must quash or modify a subpoena that…requires disclosure of privileged or other protected matter, if no exception or waiver applies," or if the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv). The undue-burden category "encompasses situations where the subpoena seeks information irrelevant to the case." *Singletary*, 298 F.R.D. at 241, quoting *Cook v. Howard*, 484 Fed. App'x 805 at *6 n.7 (4th Cir. 2012).

In general, the issue of whether a subpoena should be enforced raises a question of "its reasonableness, which requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." 9A Charles Alan Wright &

2

Arthur R. Miller, *Federal Practice and Procedure* § 2463 (2d ed. 1995). Courts are afforded "broad discretion" to determine whether to quash a subpoena. *Cook*, 484 Fed. App'x 805 (4th Cir. 2012).

### B. Motion for Protective Order

Upon a party's showing of good cause, a court may issue a more general protective order limiting the scope of discovery, in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden of expense." Fed. R. Civ. P. 26(c)(1). The protective order may prohibit a party from seeking discovery on specific matters. Fed. R. Civ. P. 26(c)(1)(D). Rule 26 limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(a)(1). In making that determination, courts must consider, among other things, "the importance of the issues at stake… the parties' access to relevant information…the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

## ARGUMENT

**I. The Court should quash Defendants' subpoena to the Department of Homeland Security and issue a protective order barring further discovery into Plaintiff's immigration status.**

**A. A plaintiff's immigration status is not relevant in an FLSA case.**

As the overwhelming majority of federal courts have recognized, a plaintiff's immigration status is simply not relevant in an FLSA case. The FLSA applies to all workers—regardless of immigration status. *See, e.g., Montoya v. S.C.C.P. Painting Contractors, Inc.*, 530 F. Supp. 2d 746, 750 (D. Md. 2008).[2] As these courts have recognized, allowing undocumented

---

[2] *See also, e.g., Patel v. Quality Inn South*, 846 F.2d 700, 706 (11th Cir.1988) ("Nothing in the FLSA suggests that undocumented aliens cannot recover unpaid minimum wages and overtime

3

workers to enforce their FLSA rights upholds U.S. workers' labor standards: after all, if undocumented workers could not enforce their FLSA rights, unscrupulous employers to would have every incentive to hire them over U.S. workers because the undocumented would be unable to complain. *See, e.g., Montoya*, 530 F. Supp. 2d at 750 (citing *Sure–Tan, Inc. v. NLRB*, 467 U.S. 883 (1984) ("Permitting an employer to circumvent the labor laws as to undocumented aliens 'permits abusive exploitation of workers' and 'creates an unacceptable economic incentive to hire undocumented workers by permitting employers to underpay them.'").[3] Thus, the Court should follow the numerous other federal courts that have considered, find that Plaintiff's immigration status as irrelevant to the issues presented in this case, and bar Defendants from further attempts to conduct discovery in this area.

**B. Defendants' issuance of a grossly overbroad subpoena to the U.S. Department of Homeland Security creates a substantial and unjustifiable risk of invasion of privacy, unfair prejudice, and intimidation that outweighs any probative value it may have.**

Even if the Plaintiff's immigration status might have some marginal probative value going to an issue in this case, any such value it may have is overwhelmed by the substantial and

---

under the act...."); *In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987) (granting mandamus reversing a district court decision to allow inquiry into petitioners' immigration status for purposes of determining their entitlement to unpaid wages under the FLSA); *Rosas v. Alice's Tea Cup, LLC*, 127 F. Supp. 3d 4, 10 (S.D.N.Y. 2015); *Colon v. Major Perry St. Corp.*, 987 F. Supp. 2d 451, 464 (S.D.N.Y. 2013); *Reyes v. Snowcap Creamery, Inc.*, 898 F. Supp. 2d 1233, 1235 (D. Colo. 2012); *Almanza v. Baird Tree Serv. Co.*, No. 3:10-CV-311, 2012 WL 4026933, at *3 (E.D. Tenn. Sept. 12, 2012); *Villareal v. El Chile Inc.*, 266 F.R.D. 207, 212 (N.D. Ill. 2010); *Widjaja v. Kang Yue USA Corp.*, 09–CV2089, 2010 WL 2132068, at *1–2 (E.D.N.Y. May 20, 2010); *Bailon v. Seok AM No. 1 Corp.*, No. C09-05483JRC, 2009 WL 4884340, at *5 (W.D. Wash. Dec. 9, 2009); *Galaviz-Zamora v. Brady Farms, Inc.*, 230 F.R.D. 499, 502 (W.D. Mich. 2005); *Zeng Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 192 (S.D.N.Y. 2002); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 25 F.Supp.2d 1053, 1056 (N.D. Cal. 1998).

[3] *See, e.g.*, cases at n.2 *supra*; *see also, e.g.*, *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 322 (D.N.J. 2005), *aff'd sub nom. Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012) (collecting cases).

unjustifiable risk of creating unfair prejudice, invading Plaintiff's privacy, and intimidating Plaintiff and others like him into silence rather than enforcing their labor rights. As with the issue of relevance, the clear consensus of the federal courts is that an employer's attempts to use the discovery process to investigate a complaining employee's immigration status creates a substantial "*in terrorem* effect"—an effect of intimidation and fear that can discourage workers workers (regardless of immigration status) from acting to vindicate their rights when they have been wronged.[4]

Here, Defendants' subpoena represents an even higher risk of improper intimidation, as it seeks information regarding Plaintiff's immigration status—indeed, his entire immigration history—not from the Plaintiff himself, but from the U.S. Department of Homeland Security. If Defendants truly felt that they had to know the Plaintiff's immigration status, they could seek an order compelling him to tell it to them[5] (a request that he would, unsurprisingly, resist on the same grounds as this motion). Instead, however, Defendants are attempting to bring Plaintiff directly to the attention of the federal authorities charged with enforcing U.S. immigration law. Whether intentional or not, such conduct represents an obvious risk of intimidation.

Moreover, the subpoena is grossly overbroad. It places no limits whatsoever on the records that it seeks, but instead requires DHS to produce "all immigration documents"

---

[4] *See, e.g.*, cases at n.2 *supra*; *see also, e.g.*, *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1065 (9th Cir. 2004) (denying a Title VII defendant employer's attempt to discover the complainants' immigration status: "Even documented workers may fear that their immigration status would be changed, or that their status would reveal the immigration problems of their family or friends; similarly, new legal residents or citizens may feel intimidated by the prospect of having their immigration history examined in a public proceeding. Any of these individuals, failing to understand the relationship between their litigation and immigration status, might choose to forego civil rights litigation.")

[5] *Accord* Fed. R. Civ. P. 26(b)(1)(C) (requiring a court to limit discovery where the information sought can be obtained from a more convenient source).

pertaining to Plaintiff in any way. However, people come into contact with the U.S. immigration system in many ways, and Defendant's subpoena, if enforced, could require DHS to turn over documents related to persecution or torture,[6] physical or mental abuse suffered as a victim of a crime,[7] or parental abuse and neglect.[8] Defendants' subpoena would likely also require DHS to disclose other highly-personal information similar to that protected from public disclosure by Federal Rule of Civil Procedure 5.2(a),[9] as well as personal information relating to Plaintiff's family members—none of which would have any relevance to this wage-and-hour case.

Absent any restrictions on its scope, then, the Court would be justified in quashing Defendants' subpoena on this basis alone. Such was the judgment of the court in *Singletary*, where an employer sought to use a third-party subpoena to discover a former employee's "complete employment file" in an FLSA overtime case. 289 F.R.D. 237 at 241–242 (E.D. Va. 2012). The *Singletary* court found that the facially-overbroad subpoena risked the production of sensitive personal information completely extraneous to the litigation, entered a protective order, and quashed the subpoena. *See id*. at 242. This Court should do the same.

## II.     The Court should award Plaintiff the fees and costs of this motion.

A court that grants a protective order must require the party whose conduct necessitated the motion to pay the movant's attorney's fees. Fed. R. Civ. P. 26(c)(3); Fed. R. Civ. P. 37(a)(5). Should the Court grant Plaintiff's motion and issue a protective order, Plaintiff thus respectfully request the costs and fees he has incurred in seeking it.

---

[6] *See* 8 U.S.C. § 1158 (asylum); *id.* at § 1231(b)(3)(A) (withholding of removal).
[7] *See* 8 U.S.C. § 1101(a)(15)(U)(i)(I) (U visa petition)
[8] *See* 8 U.S.C. § 1101(a)(27)(J) (special immigrant juvenile status).
[9] As the Fourth Circuit has recognized, a DHS "Alien Registration Number" (or "A-Number") is as sufficient to identify a specific individual as is a social security number—or even a fingerprint. *United States v. Mitchell*, 518 F.3d 230, 234 (4th Cir. 2008).

Respectfully submitted this 28th day of March, 2018,

<u>/s/ Nicholas Cooper Marritz</u>
Nicholas Cooper Marritz (VSB #89795)
Hallie Ryan (VSB #85927)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 720-5607
Fax: (703) 778-3454
nicholas@justice4all.org

**Certificate of Service**

I hereby certify that on March 28, 2018, I filed the foregoing Memorandum In Support of Motion for a Protective Order and to Quash Subpoena via the Court's CM/ECF system, which will cause a notice of electronic filing (NEF) to be sent to all counsel of record.

| | |
|---|---|
| /s/ Nicholas Cooper Marritz<br>Nicholas Cooper Marritz (VSB #89795)<br>LEGAL AID JUSTICE CENTER<br>6066 Leesburg Pike, Suite 520<br>Falls Church, VA 22041<br>Tel: (703) 720-5607<br>Fax: (703) 778-3454<br>nicholas@justice4all.org<br>*Counsel for Plaintiff* | Date: March 28, 2018 |